IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MOHAMMAD MEHDI ZANDI and BEHROOZ ESLAMI, | ) ) ) | Civil No. 05-36-JE |
| Plaintiff, | ) ) | |
| v. | ) ) | FINDINGS AND RECOMMENDATION |
| UNITED STATES OF AMERICA; EDUARDO AGUIRRE, Director of the United States Customs and Immigration Service, and Does 1-5 inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

    Thomas H. Nelson
    825 N.E. Multnomah, Suite 925
    Portland, OR 97232
        Attorney for Plaintiff

    Kenneth C. Bauman
    Asst. United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902
        Attorneys for Defendants

JELDERKS, Magistrate Judge:

FINDINGS & RECOMMENDATION - 1

Plaintiffs Mohammad Mehdi Zandi and Behrooz Eslami bring this action seeking declaratory and injunctive relief against defendants the United States of America; Eduardo Aguirre, Director of the United States Customs and Immigration Service[1]; and five Doe defendants. Defendants move to dismiss, or in the alternative, for summary judgment. The alternative motion for summary judgment should be granted.

## BACKGROUND

This summary of the factual background of this action is based upon the plaintiffs' complaint and additional statements included in defendants' concise statement of material facts. Plaintiffs do not dispute defendants' assertion that the court may take judicial notice of those facts. Accordingly, the following facts are accepted as true for the purposes of analyzing the pending motion.

Plaintiff Zandi is an Iranian of Kurdish ancestry. Plaintiff Eslami, a permanent resident of the United States who lives in Beaverton, Oregon, is a relative of plaintiff Zandi.

On behalf of himself and his family, Zandi sought a visa to enter and remain in the United States through the "Diversity Immigration Lottery Program." That program

---

[1] The correct name of this agency is the United States Citizenship and Immigration Service.

FINDINGS & RECOMMENDATION - 2

provides a limited number of immigrant visas to individuals from countries that historically have had low rates of immigration to the United States.  Plaintiff Zandi was informed on May 15, 2004, that he and his family had been selected for further proceedings, and was instructed to prepare the necessary papers and to appear for an interview on September 22, 2004 at the United States Consulate in Abu Dhabi, United Arab Emirates.

Individuals who are selected for processing under the Diversity Immigration Program are eligible for consideration during the fiscal year in which they are selected.  The 2004 fiscal year ended on September 30, 2004.

United States immigration regulations require that applicants for diversity visas establish that they will not become public charges if they are allowed to immigrate to the United States.

Plaintiff Zandi appeared at the United States Consulate in Abu Dhabi for his scheduled interview on September 22, 2004.  At the interview, plaintiff Zandi was told that he needed to provide a letter of support from a sponsor in the United States.  He was also told that, because the 2004 program would expire in only eight days, the letter could be transmitted by facsimile, with the original documents filed later.

In order to satisfy this requirement, plaintiff Zandi communicated with plaintiff Eslami, who agreed to provide a sponsorship letter. At 1:00 p.m. Pacific Time on September 29, 2004, plaintiff Eslami faxed an affidavit of support and related documents to the United States Consulate in Abu Dhabi. The fax arrived simultaneously at the Consulate at 1:00 a.m. on September 30, the last day of the fiscal year. The Doe defendants, described in the complaint as "individuals employed at the United States Consulate in Abu Dhabi, United Arab Emirates, who are responsible for implementing the diversity visa program," refused to accept or consider the material plaintiff Eslami sent.

September 29, 2004, was a Thursday. September 30, 2004, was a Friday. The United States Consulate in Abu Dhabi is open from Saturday through Wednesday: In accordance with Muslim custom, the Consulate is closed on Thursday and Friday, the Muslim weekend. September 28, 2004, was therefore the last business day for the Consulate in Abu Dhabi in the 2004 fiscal year.

## PLAINTIFFS' CLAIMS

Plaintiffs seek a declaration that the information and financial records that plaintiff Zandi provided the Doe defendants during his interview were sufficient to establish that Zandi and his family would not become a public charge

FINDINGS & RECOMMENDATION - 4

when they arrived in the United States. They also seek a declaration that the Doe defendants should have "accepted, considered, and approved the Affidavit of Support and other documents" that plaintiff Eslami transmitted, and a declaration that the Doe defendants should have issued plaintiff Zandi and his family a diversity visa during the 2004 program year. Plaintiffs seek a mandatory injunction "requiring all defendants to take all steps necessary to issue Plaintiff Zandi and his family a diversity visa for the 2004 program year . . . ."

**DISCUSSION**

I. Applicable Analysis

At the outset, I must determine whether the pending motion should be analyzed as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or as a motion for summary judgment under Fed. R. Civ. P. 56(c).

Federal Rule of Civil Procedure 12(b) provides that if, in evaluating a motion to dismiss for failure to state a claim, the court does not exclude any "matters outside the pleadings," the court shall construe the motion as a motion for summary judgment, and shall give all parties the opportunity to present material accordingly. Defendants here have supplemented their motion to dismiss and alternative motion for summary judgment with a concise statement of

FINDINGS & RECOMMENDATION - 5

material facts of which defendants assert the court may take judicial notice, and some supporting materials. In the absence of any attempt by plaintiffs to dispute the additional facts asserted or the supporting materials, I have not excluded these additional facts. Though these facts do not directly affect the legal analysis of the pending motions, they do provide a useful context for defendants' failure to consider plaintiff Zandi's application for an immigration visa for himself and his family.

Because I have not excluded defendants' references to certain facts that are outside the pleadings, I conclude that defendants' pending motion should be analyzed as a motion for summary judgment rather than as a motion to dismiss for failure to state a claim. Plaintiffs have had sufficient time and opportunity to submit any material that might controvert the statements set out in defendants' concise statement of material facts, and have not done so. Under these circumstances, analysis of the pending motion under the standards applicable to a motion for summary judgment is appropriate.

II. <u>Standards for Analyzing Motions for Summary Judgment</u>

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter

FINDINGS & RECOMMENDATION - 6

of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. Analysis

A. Eligibility for consideration following end of fiscal year

The Diversity Immigrant Visa Program (DV Program), which was instituted by Congress in 1990, provides visas to

FINDINGS & RECOMMENDATION - 7

individuals from countries with historically low rates of immigration admissions to the United States. Coraggioso v. Ashcroft, 355 F.2d 730, 732 (3d Cir. 2004) (citing 8 U.S.C. § 1153(c)). Under the DV Program, 55,000 visas are allotted each fiscal year to individuals who qualify for permanent resident status. 8 U.S.C. §§ 1151(e). The spouse and children under the age of twenty-one of an alien who qualifies for a visa under the DV Program are also entitled to visas. 8 U.S.C. § 1153(d).

Individuals may seek a visa through the DV Program by filing a petition with the State Department, which in turn randomly selects individuals who are eligible to participate in the Program. Coraggioso, 355 F.3d at 732. Though considered a "lottery winner," an individual selected does not necessarily receive a visa: Approximately 100,000 "winners" are selected for the 55,000 visas that are available each year. Id. Accordingly, "a lottery winner obtains only the right to apply to receive a visa through the DV Program," and must submit documents and "undergo an extensive background review" in order to obtain a visa. Id.

Disposition of the pending motions turns on the correct interpretation of the limitation on eligibility for receipt of a visa under the DV Program set out at 8 U.S.C. § 1154(a)(1)(I)(ii)(II). That section provides that aliens who, like plaintiff Zandi, qualify "through random selection,

FINDINGS & RECOMMENDATION - 8

for a visa under [the DV Program] shall remain eligible to receive such visa only through the end of the specific fiscal year in which they were selected." See also, 22 C.F.R. § 42.33(a)(1) ("Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility.").

Defendants contend that plaintiffs cannot prevail because they have no authority to grant plaintiff Zandi a visa under the DV Program after the end of the 2004 fiscal year. I agree. The Ninth Circuit has construed the DV Program as imposing a "Congressionally-mandated, one-year deadline" which cannot be equitably tolled. Carrillo-Gonzalez v. I.N.S., 353 F.3d 1077, 1079 (9th Cir. 2003). The Carrillo court concluded that, even if fraud had prevented a lottery winner from obtaining a DV Program visa before the end of the relevant fiscal year, there was no basis for tolling "the DV Lottery Program's clear, statutory deadline." Id. at 1080.

Other Circuits have also held that a lottery winner is no longer eligible to receive a diversity immigrant visa after the end of fiscal year in which an individual is granted the right to apply for a visa under the DV Program. In Iddir v. I.N.S., 301 F.3d 492, 494 (7th Cir. 2002), the court noted that "the applicant must complete the process, application and adjudication, before time expires because a visa can only be

FINDINGS & RECOMMENDATION - 9

issued during the relevant fiscal year." The <u>Iddir</u> court concluded that, even if applicants did not obtain visas under the DV Program because the INS failed to fulfill its duty to process their applications during the relevant fiscal year, no remedy was available because "the statute unequivocally states that the applicants only remain eligible 'through the end of the specific fiscal year for which they were selected.'" <u>Id.</u> at 500-501.

In <u>Nyaga v. Ashcroft</u>, 323 F.3d 906, 916 (11th Cir. 2003) the court held that, under the "plain meaning" of §1154(a)(1)(I)(ii)(II), an applicant's eligibility for a diversity visa expired at midnight on the last day of the relevant fiscal year, and that no visa could be issued under the DV program after that time. In reaching this conclusion, the <u>Nyaga</u> court reversed the district court's conclusion that a lottery winner was still eligible to receive a visa after the expiration of the relevant fiscal year "'because the Government did not diligently act to process the visa.'" <u>Id.</u> at 911 (<u>quoting</u> <u>Nyaga v. Ashcroft</u>, 186 F. Supp. 2d 1244, 1256 n. 13 (N. D. Ga. 2002)).

In <u>Coraggioso</u>, 355 F.3d 730, 734-735 (3d Cir. 2004), the court concluded "with regret" that it could grant no relief where it appeared that the plaintiff "would have been entitled to a diversity visa (and, hence, permanent resident status) if the INS had performed its statutorily mandated duty and timely

FINDINGS & RECOMMENDATION - 10

adjudicated [the] DV Program applications."  The court noted that, in concluding that a visa could not be issued "pursuant to the DV program for a given fiscal year upon the expiration of that fiscal year," it "join[ed] the Seventh and Eleventh Circuits . . . ."  Id. at 734.

Plaintiffs have cited, and I have found, no reported decisions holding or implying that a lottery winner who has not obtained a visa during the relevant fiscal year may remain eligible for such a visa.  Based upon the plain language of the relevant statute and the carefully reasoned decisions discussed above, I conclude that plaintiff Zandi cannot receive a visa pursuant to the 2004 DV Program after September 30, 2004, the date upon which his eligibility expired.  I therefore recommend granting defendants' alternative motion for summary judgment.

B. Jurisdiction

Given my conclusion that defendants are clearly entitled to summary judgment on other grounds, I need not and do not reach defendants' contention that this court lacks jurisdiction to review the Consul's decision to deny plaintiff Zandi's application for a visa pursuant to the DV Program.

## CONCLUSION

Defendants' alternative motion for summary judgment (#7-2) should be GRANTED, and defendants' motion to dismiss (#7-1) should be DENIED as moot.

A judgment should be entered dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due June 6, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 19th day of May, 2005.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge